# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| WALTHER ADEMIR A. S., | Case No. 26-cv-2804 (LMP/SGE) |
| Petitioner, | |
| v. | **ORDER GRANTING HABEAS PETITION** |
| TODD BLANCHE, *in his official capacity as Acting Attorney General of the United States*; MARKWAYNE MULLIN, *in his official capacity as Secretary of the Department of Homeland Security*; DAVID VENTURELLA, *in his official capacity as Senior Official Performing Duties of Director of United States Immigration and Customs Enforcement*; DAVID EASTERWOOD, *in his official capacity as Acting Director, St. Paul Field Office, U.S. Immigration and Customs Enforcement*; and JOEL BROTT, *in his official capacity as Sheriff of Sherburne County*, | |
| Respondents. | |

Rebekah L. Bailey, **Nichols Kaster PLLP, Minneapolis, MN**, for Petitioner.

Pedro del Valle, IV, **United States Attorney's Office, Minneapolis, MN**, for Respondents.[1]

---

[1]    When used in this Order, "Respondents" or "Government" refer to the federal officials named as Respondents.  Respondent Joel Brott, the Sherburne County Sheriff, has not participated in these proceedings.

Petitioner Walther Ademir A. S.[2] brings a petition for a writ of habeas corpus, challenging the legality of his arrest and detention.  For the following reasons, the petition is granted, and the Court orders Walther's release from detention.

## BACKGROUND

Walther is a native and citizen of Mexico who has lived in the United States since October 2021.  ECF No. 1 ¶ 46.  He resides in the Twin Cities with his partner and small child and was most recently employed as a janitor.  *Id.* ¶¶ 46–47.  Walther has remained law abiding since arriving in the United States.  ECF No. 6-1 at 3.

On May 29, 2026, officers with Immigration and Customs Enforcement ("ICE") were parked outside of the Dakota County Courthouse in Hastings, Minnesota, to conduct a targeted enforcement action on another individual.  *Id.* at 2.  Officers observed Walther leaving the courthouse and noted that he "repeatedly and deliberately averted his gaze, avoided any eye contact with officers, and hyper-fixated on [their] positioning."  ECF No. 6 ¶ 5.  ICE officers saw Walther enter a vehicle; officers ran a database query on the vehicle, which revealed that the registered owner did not have lawful immigration status in the United States.  *Id.* ¶ 6.  ICE officers approached the vehicle, which had the keys in the ignition, and, upon approaching, the male driver locked the doors and rolled up his window.  *Id.* ¶ 7.  A female passenger instructed the driver not to answer any questions and physically positioned herself between officers and the driver's side window.  *Id.*

---

[2]    The Court uses the petitioner's first name throughout this order to comport with this District's practice of using only the first name and last initial of any nongovernmental parties in immigration cases.  No disrespect is intended in doing so.

After a brief period, the driver complied with a request to lower his window. *Id.* The driver identified himself as Walther and admitted to being in the United States without legal status. *Id.* ¶ 8. After confirming that there was no evidence of lawful immigration status, ICE officers took Walther into custody. *Id.* ¶ 15. That same day, ICE served Walther with an administrative arrest warrant, *id.*, and on June 2, 2026, ICE served Walther with a Notice to Appear in removal proceedings, ECF No. 6-3. Walther remains detained at the Sherburne County Jail in Elk River, Minnesota. ECF No. 6 ¶ 16.

On June 1, 2026, Walther filed the instant habeas petition. ECF No. 1. Walther first argues that the Government's failure to provide him with a bond redetermination hearing violates his due process rights.[3] ECF No. 1 ¶¶ 53–69. Walther also claims that he is entitled to immediate release because ICE officers violated federal law regarding warrantless immigration arrests. *Id.* ¶ 79. Walther alternatively requests a bond redetermination hearing. *Id.* ¶ 81.

The Court ordered the Government to respond to the petition no later than June 8, 2026, with any reply from Walther due by June 12, 2026. ECF No. 3. Both the Government and Walther timely provided that briefing. ECF Nos. 5, 7.

---

[3]    Walther also contests that he is subject to mandatory detention as a statutory matter. ECF No. 1 ¶¶ 70–76. Walther recognizes, however, that the Eighth Circuit foreclosed this argument in *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026), so he includes that claim only for issue-preservation purposes. ECF No. 1 ¶ 76.

## ANALYSIS

"Congress has granted federal district courts, 'within their respective jurisdictions,' the authority to hear applications for habeas corpus by any person who claims to be held 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Rasul v. Bush*, 542 U.S. 466, 473 (2004) (quoting 28 U.S.C. § 2241(a), (c)(3)). The protections of habeas corpus extend to those in immigration detention. *See INS v. St. Cyr*, 533 U.S. 289, 305–06 (2001).

Walther asserts that he is entitled to immediate release because ICE officers violated federal law regarding warrantless immigration arrests. ECF No. 1 ¶ 79. "As a general rule, it is not a crime for a removable alien to remain present in the United States," so police may not arrest "someone based on nothing more than possible removability." *Arizona v. United States*, 567 U.S. 387, 407 (2012). Instead, the "federal statutory structure instructs when it is appropriate to arrest an alien during the removal process." *Id.* Relevant here, 8 U.S.C. § 1226(a) allows the Attorney General to "exercise discretion to issue a warrant for an alien's arrest and detention." *Id.* But if "no federal warrant has been issued, [ICE] officers have more limited authority," *id.*, and ICE may arrest a noncitizen only when an officer has "reason to believe" (1) that a noncitizen is in violation of the immigration laws; and (2) "is likely to escape before a warrant can be obtained for his arrest."[4]  8 U.S.C.

---

[4]    Although immigration officers do not need to issue a warrant to detain a noncitizen under 8 U.S.C. § 1225(b)(2)(A), *see Muse v. Mullin*, No. 26-cv-4024-CJW-MAR, 2026 WL 1008532, at *2–3 (N.D. Iowa Apr. 14, 2026), warrantless arrests of individuals ultimately detained under 8 U.S.C. § 1225(b)(2)(A) must still comply with the requirements of 8 U.S.C. § 1357(a)(2), *see id.*; *Francisco M. A. v. Blanche*, No. 26-cv-2032 (JRT/EMB),

§ 1357(a)(2).   The language "reason to believe" in 8 U.S.C. § 1357(a)(2) "means constitutionally required probable cause."  *United States v. Quintana*, 623 F.3d 1237, 1239 (8th Cir. 2010).

The Government argues that it had probable cause to believe Walther was "likely to escape" before a warrant could be obtained for his arrest.  ECF No. 5 at 14–16.  The Government offers a declaration from an ICE officer present during Walther's arrest, who cites the following circumstances as raising suspicion that Walther would flee before a warrant could be obtained: (1) Walther appeared nervous and evasive when he saw ICE officers while exiting the courthouse and entering a vehicle; (2) Walther entered the driver's side of a vehicle with the keys in the ignition; (3) when approached by officers, Walther locked the doors and rolled up the windows; (4) Walther's passenger attempted to impede officers' questioning; (5) Walther appeared to be young, healthy, and physically capable of fleeing; and (6) Walther admitted to being present in the United States without lawful immigration status and could have accordingly been charged with improper entry under 8 U.S.C. § 1325.  ECF No. 6 ¶¶ 5–12.  The Government argues that these facts show that Walther "was likely to escape the location before an administrative warrant could issue." ECF No. 5 at 14.

But the Government's argument gets off on the wrong foot when it suggests that "likely to escape" in 8 U.S.C. § 1357(a)(2) means whether a noncitizen will remain at the

---

2026 WL 1229701, at *2 (D. Minn. May 5, 2026).  The Government does not contend otherwise.

scene of encounter with law enforcement before an administrative warrant can be obtained. That interpretation construes 8 U.S.C. § 1357(a)(2) too broadly, for the Supreme Court has explained that warrantless arrests should be conducted in "specific, limited circumstances." *Arizona*, 567 U.S. at 410. Instead, courts have construed that phrase to mean "likely to evade detention by immigration officers." *Hussen v. Noem*, 822 F. Supp. 3d 944, 988 (D. Minn. 2026) (quoting *Moreno v. Napolitano*, 213 F. Supp. 3d 999, 1006–07 (N.D. Ill. 2016)); *see also Jesus F. D. v. Mullin*, No. 26-cv-2486 (PJS/DTS), ECF No. 10 at 8 (D. Minn. June 10, 2026) (interpreting "likely to escape" to mean "risk of flight"); *Campos v. United States*, 888 F.3d 724, 734–35 (5th Cir. 2018) (interpreting "likely to escape" as likely to "disappear before a warrant could be obtained"); *United States v. Khan*, 324 F. Supp. 2d 1177, 1187 (D. Colo. 2004). And that analysis considers not just whether the noncitizen will be located at the scene of encounter with immigration enforcement but also whether immigration enforcement would be able to arrest the noncitizen at "another clearly identifiable location." *Escobar Molina v. U.S. Dep't of Homeland Sec.*, Civil Action No. 25-3417 (BAH), 2026 WL 1256234, at *10 (D.D.C. May 7, 2026); *see United States v. Bautista-Ramos*, No. 18-cr-4066-LTS, 2018 WL 5726236, at *7 (N.D. Iowa Oct. 15, 2018) (considering whether immigration officers "would have had trouble finding [arrestee] again if they had released him while they obtained a warrant"), *report and recommendation adopted*, 2018 WL 5723948 (N.D. Iowa Nov. 1, 2018). Recent guidance from ICE accords with this definition: a January 2026 memorandum from former ICE Acting Director Todd Lyons interpreted the "plain meaning" of the phrase "likely to escape" in 8 U.S.C.

§ 1357(a)(2) as likely "to be located at the scene of the encounter *or another clearly identifiable location once an administrative warrant is obtained*."[5]

Accordingly, the relevant inquiry is not simply whether Walther was likely to leave the Dakota County Courthouse parking lot before ICE officers could obtain a warrant, but rather whether it was likely that ICE officers would be able to locate Walther after obtaining a warrant to arrest him. *See Bautista-Ramos*, 2018 WL 5726236, at *7; *Escobar Molina*, 2026 WL 1256234, at *10.

The Government makes no argument that Walther was "likely to evade detention by immigration officers," and its evidence likewise falls short. Take first the Government's assertion that Walther appeared nervous and evasive when he saw ICE officers. ECF No. 1 ¶ 5. It is permissible for ICE officers to consider a "subject's behavior prior to and during the encounter" when assessing likelihood of escape. *Escobar Molina*, 2026 WL 1256234, at *14. But this fact is of "limited significance," as it is not "unusual for a person to exhibit signs of nervousness when confronted by an officer." *United States v. Guerrero*, 374 F.3d 584, 590 (8th Cir. 2004) (holding as much for the lower proof standard of "reasonable suspicion"). That is even more true of late in the Twin Cities, where increased immigration enforcement has targeted noncitizens in recent months. *See generally Hussen*, 822 F. Supp. 3d at 957–79 (documenting aggressive tactics by immigration enforcement officers targeting citizens and noncitizens alike).

---

[5]     This memorandum can be found at *Hussen v. Noem*, No. 26-cv-324 (ECT/ECW), ECF No. 85-1 (D. Minn. filed Jan. 30, 2026).

7

Next consider the Government's assertion that when approached by ICE officers, Walther was in the driver's seat of a vehicle with the keys in the ignition. ECF No. 6 ¶ 7. That plausibly suggests that Walther could have left the Dakota County Courthouse parking lot, but it reveals nothing about whether ICE officers could have later found Walther at another identifiable location. *See Elias M. v. Blanche*, No. 26-cv-2519 (JMB/DLM), ECF No. 23 at 11, 13 (D. Minn. June 5, 2026) (holding that the mere fact that immigration officers encountered noncitizen in his vehicle during a traffic stop did not demonstrate a likelihood of escape). And although Walther initially rolled up his vehicle window and locked the vehicle's doors when ICE officers approached him, ECF No. 6 ¶ 7, he eventually rolled down his window and candidly admitted to ICE officers that he did not have lawful immigration status, *id.* ¶ 8. Those facts contrast sharply with the Eighth Circuit's decision in *Quintana*, finding a likelihood of escape when a noncitizen was stopped while speeding in a car registered in a distant state, told an officer he was heading back to that distant state, provided false information to the arresting officer, and was suspected of drug trafficking. *See* 623 F.3d at 1238, 1241; *see also Jose Luis G. G. v. Noem*, No. 5:26-CV-05023-KES, 2026 WL 836807, at *2 (D.S.D. Mar. 26, 2026) (finding likelihood of escape when the noncitizen was previously a "passenger in a vehicle whose driver rammed a government vehicle, fled, and twice attempted to evade arrest"). The circumstances in this case pale in comparison to *Quintana* and *Jose Luis G. G.* and do not lend themselves to a similar suggestion that Walther would "disappear before a warrant could be obtained." *Campos*, 888 F.3d at 734–35; *see Ramirez Ovando v. Noem*, 810 F. Supp. 3d 1209, 1232 (D. Colo. 2025) (holding the fact that a noncitizen was stopped in his

8

vehicle near his home "add[ed] nothing" to the likelihood that he would escape before a warrant was obtained).[6]  The Government's assertion that Walther was young, healthy, and capable of fleeing, while plausibly suggesting that he would leave the Dakota County Courthouse parking lot, again fails to shed light on whether immigration officers later would be able to locate Walther after obtaining a warrant.  *See* ECF No. 6 ¶ 11.

The Government finally notes that Walther admitted that he was in the United States without lawful immigration status and that he could have been charged with improper entry under 8 U.S.C. § 1325.  ECF No. 6 ¶¶ 8, 11.  But a person does not immediately present a likelihood of escape merely by being a noncitizen.  "To hold that a noncitizen is likely to escape merely because they are removable would effectively collapse § 1357(a)(2)'s two distinct requirements into one: Section 1357(a)(2) requires that the officer must have 'reason to believe' that (1) the noncitizen is in the United States illegally **and** (2) the noncitizen is 'likely to escape before a warrant can be obtained for his arrest.'" *Francisco M. A. v. Blanche*, No. 26-cv-2032 (JRT/EMB), 2026 WL 1229701, at *3 (D. Minn. May 5, 2026) (emphasis in original).  Simply admitting that he was a noncitizen who entered the United States illegally did not make it likely that Walther was about to go off the grid.

That conclusion becomes even stronger when considering Walther's ties to the community.  Courts have made the "self-evident finding that the likelihood of escape is

---

[6]    The Government observes that the passenger in Walther's vehicle attempted to impede questioning by ICE officers, ECF No. 6 ¶ 7, but it is unclear why the passenger's actions are relevant to *Walther's* likelihood of escaping.

lower when the individual has resided in the country for a lengthy period of time and has strong community ties." *Escobar Molina v. U.S. Dep't of Homeland Sec.*, 811 F. Supp. 3d 1, 31, (D.D.C. 2025) (collecting cases involving noncitizens with jobs, property, and families in the United States). Walther lived in the Twin Cities with his partner and child, supported his family as a janitor prior to his arrest, and has no criminal history. ECF No. 1 ¶¶ 3, 46–47; ECF No. 6-1 at 3. Of course, officers at the scene knew none of this because they did not ask. Yet the fact that officers "asked no questions—until after [Walther's] arrest[]—bearing on flight risk, including about plaintiff[']s famil[y], employment, or other community ties" undermines the Government's claim that the ICE officers on the scene had reason to believe that Walther would evade detention before a warrant could be issued. *Ramirez Ovando*, 810 F. Supp. 3d at 1231. Indeed, it is ICE's burden to make a "particularized assessment" into whether the noncitizen is likely to evade detention. *Orellana v. Nobles County*, 230 F. Supp. 3d 934, 946 (D. Minn. 2017). Had ICE officers learned about Walther's community ties, fixed address, and lack of criminal history, they would have learned that they were unlikely to have "trouble finding [him] again if they had released him while they obtained a warrant." *Bautista-Ramos*, 2018 WL 5726236, at *7; *see United States v. Pacheco-Alvarez*, 227 F. Supp. 3d 863, 890 (S.D. Ohio 2016) (finding no likelihood of escape when noncitizen had a stable job, lived with his fiancé, and helped pay her rent and raise her two children); *Khan*, 324 F. Supp. 2d at 1187 (same conclusion when noncitizen worked two jobs, owned a vehicle, paid rent, and never experienced legal trouble before his immigration arrest).

In sum, the Government did not have probable cause to conclude that Walther was "likely to escape" when they arrested him without a warrant.  When immigration officers conduct a warrantless arrest in violation of 8 U.S.C. § 1357(a)(2), courts in this District have ordered release as a remedy.  *See Jesus F. D.*, No. 26-cv-2486 (PJS/DTS), ECF No. 10 at 10 (citing *Munaf v. Geren*, 553 U.S. 674, 693 (2008) (describing release as the "typical remedy" for unlawful executive detention)); *Elias M.*, No. 26-cv-2519 (JMB/DLM), ECF No. 23 at 14; *Francisco M. A.*, 2026 WL 1229701, at *3; *Martha C. G. P. v. Blanche*, No. 26-cv-2308 (DWF/JFD), ECF No. 10 at 7 (D. Minn. May 13, 2026); *Cutberto R. P. v. Blanche*, No. 26-cv-1934 (MJD/DTS), ECF No. 11 at 14 (D. Minn. Apr. 10, 2026).  The Court will follow that approach.[7]

## CONCLUSION

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT:**

1.  Walther's Petition for a Writ of Habeas Corpus (ECF No. 1) is **GRANTED**; and

2.  The Government is **ORDERED** to release Walther from custody without conditions and with all personal property by no later than 5:00 p.m. on **Thursday, June 18, 2026**;

3.  The Government is **ORDERED** to file a status report certifying its compliance with this Order by no later than **Monday, June 22, 2026**; and

4.  If the Government seeks to impose conditions of release on Walther or to retain Walther's property, the Government's status report must include:

---

[7]   Because the Court grants Walther release from custody on statutory grounds, the Court need not address Walther's constitutional arguments in support of a bond hearing.

(a) the conditions imposed or the property retained; and (b) the legal basis on which the conditions are imposed or the property is retained.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: June 16, 2026                        *s/Laura M. Provinzino*
                                            Laura M. Provinzino
                                            United States District Judge